## SAMS v. BOARD OF COM'RS OF CREEK COUNTY.

No. 9213—Opinion Filed Feb. 11, 1919.

(178 Pac. 668.)

(Syllabus.)

1. **Schools and School Districts—Contract with Teacher — Action for Breach — Statute.**

Where, preliminary to the making of the estimate by the board of county commissioners required by section 8, art. 15, c. 219, Sess. Laws 1913, the county superintendent of public instruction makes for the use and information of the county commissioners an es-

timate of the needs of the separate schools of the county for the ensuing year, and itemizes the distributive sums necessary for the payment of teachers' salaries in all the separate school districts of the county, such voluntary estimate, as to a particular district, does not affect the right of a teacher holding a valid contract to recover for a breach thereof on the ground that the indebtedness of such district is in excess of the superintendent's estimate.

## 2. Schools and School Districts—Separate County Schools — Taxation — Teacher's Salary.

Taxes annually levied and collected for the maintenance of county separate schools for colored children, not in excess of the income and revenue provided for such year, not being collected from the taxable property of the separate school districts, but from the property of the county at large, are properly chargeable with the payment of teachers' salaries legally contracted for and incurred throughout the county.

Error from County Court, Creek County; J. V. Frazier, Judge.

Action by Ada Sams against the Board of County Commissioners of Creek County. From a judgment for a lesser sum than sued for, plaintiff brings error. Reversed and rendered.

Burt & Shaha, for plaintiff in error.

SHARP, J. On the 28th day of June, 1915, the then county superintendent of public instruction of Creek county entered into a written contract with the plaintiff, Ada Sams, to teach a nine months term of separate school in Creek county, Okla., beginning July 19, 1915. At the time of making the contract Ada Sams was the holder of a second grade county certificate, which by its terms expired on June 28, 1917. On July 1st following the making of the contract the newly elected county superintendent was inducted into office, and proceeded promptly to "cancel" plaintiff's contract and notified her not to open the school. Plaintiff thereafter not only attempted to secure employment as a teacher in Creek county, but in Tulsa, Okmulgee, Lincoln, and Noble counties as well, and paid out in trying to secure such employment the sum of $25.

Although the case was submitted at the June, 1918, term of the court, defendant in error has neither filed a brief nor offered an excuse for its failure so to do. The answer filed by the defendant in the lower court consisted of a general denial, but upon call of the case for trial, and after plaintiff's attorney had made her opening statement to the jury, the attorney for the board of

county commissioners was granted leave to amend its answer "by dictating into the record" the allegation that plaintiff had no legal contract, "because there was no estimate made and approved for district No. 47 for the year 1915 and 1916." Furthermore, it was charged in the so-called amended answer that there was an estimate made and approved for but one teacher in district 47, for which a contract was made prior to the making of the contract with plaintiff, and that the county superintendent was without right or authority to execute a binding contract with a second teacher. The other allegations of the amendment are not pertinent to the issues here presented, and need not be considered.

It appears that two days prior to the making of the contract with plaintiff the outgoing county superintendent made a teacher's contract with one Collins to teach a nine months term of separate school in Creek county, to commence some time during the year 1915. The only estimate for maintenance of the separate schools offered in evidence was that made out by the newly elected county superintendent, and which we may fairly assume, in respect to the separate schools of the county, to have been adopted and acted upon by the board of county commissioners, as well as by the county excise board. From this estimate it appears it was necessary to raise for the year beginning July 1, 1915, for the maintenance of the separate schools of Creek county, in addition to items for repairs, purchase, and rent of school buildings, the sum of $16,835 for salaries and $1,000 for incidental expenses. The salary account was for the payment of 34 teachers in the 33 separate school districts of the county, there being 2 teachers provided for in district No. 2. The salaries ranged from $50 to $75 per month, and according to the superintendent's estimate, all of the terms were to be of eight months duration, except three. These were for nine months. The testimony established that, while the superintendent's estimates included eight and nine months terms in all the separate school districts of the county, but seven months terms were in fact held. This, then, left on hand out of the estimate and subsequent levy for the payment of teachers' salaries for the separate schools of the county the sum of $2,125 or the difference between the amount levied, necessary to pay for the full terms in the several districts, and these amounts paid out in salaries for the seven months terms.

Revenues for carrying on the county sep-

arate schools for colored children are derived, not by the levy of a tax upon the taxable property of the school district, but as provided for in section 8, art. 15, c. 219, Sess. L. 1913. The statute requires that:

"In all counties where county separate schools for white and colored children are maintained, the county excise board shall annually levy a tax on all taxable property in their respective counties sufficient to maintain such separate schools, as hereinafter provided. Upon an estimate made by the county commissioners, said taxes shall be estimated, published, levied and collected, in the same manner as other taxes for county purposes, and in school districts where such separate schools are maintained, no white child shall attend a colored school or a colored child attend a white school."

The taxes collected from the county in the payment of the cost of conducting the colored schools, not being confined to the taxable property of the separate school district, could be used in payment of teachers' salaries legally contracted for in any school district in the county. The fact that the county superintendent, as a basis of information for the board of county commissioners, made up a list containing the number of the district, the term of school to be held therein, and the monthly salary to be paid, in no wise limited the use of the funds collected from the taxable property of the entire county to the specific salary named in any particular district. While a teacher's contract, entered into before the annual meeting, is binding upon the district only for an amount that comes within the estimate when made and approved as provided in section 17, art. 5, c. 219, Sess. L. 1913, yet as the only contracts made as disclosed by the record were with the plaintiff and teacher Collins, we cannot say that the county became indebted in an amount in excess of the income and revenue provided for the succeeding year. Section 26, art. 10, Constitution. Nor can it be said that the tax levied for the separate schools of the county was devoted to a purpose other than that for which it was levied and collected as forbidden by section 19, art. 10, of the Constitution.

It appears that school district No. 47 was 6½ miles in length, and that the old school building was located well to the west portion of the district, and that the patrons of the eastern portion of the district, after consultation with the county superintendent, at their own expense, erected a schoolhouse for the convenience and use of the colored school children of that vicinity. It was this school that the plaintiff was employed to teach. We have carefully examined the rec-

ord, and can arrive at no other conclusion than that the action of the county superintendent in refusing plaintiff permission to carry out her contract was wrongful, arbitrary, and without form of legal justification. That the county is liable for this breach of contract, and for the expenses necessarily incurred by the plaintiff in her unavailing attempt to secure other employment, cannot seriously be questioned.

The judgment of the trial court, awarding plaintiff a judgment for $65, is reversed, and a judgment rendered for the sum of $455, with interest and for all costs.

All the Justices concurring, except HARRISON, J., not participating.